**THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

|                              |   |                                     |
|------------------------------|---|-------------------------------------|
| **DANIELLE WHITE**           | : |                                     |
|                              | : |                                     |
| **Plaintiff,**               | : | **Case No.: 1:21-cv-110**           |
|                              | : |                                     |
|                              | : | **Judge**                           |
| **v.**                       | : |                                     |
|                              | : |                                     |
|                              | : |                                     |
| **UNITED DAIRY FARMERS**     | : | **COMPLAINT**                       |
|                              | : |                                     |
| **Defendant.**               | : | **Jury Demand Endorsed Herein**     |
|                              | : |                                     |
|                              | : |                                     |

NOW COMES Plaintiff Danielle White ("Plaintiff") and proffers this Complaint for damages against Defendant United Dairy Farmers ("Defendant").

## THE PARTIES

1. Plaintiff Danielle White is a natural person residing in Ohio.

2. Defendant United Dairy Farmers is a Corporation for Profit doing business in the Southern District of Ohio.

3. At all times relevant herein, Plaintiff was an "employee" as that term is defined under the Family and Medical Leave Act ("FMLA"), the ADA Amendments Act of 2008 ("ADA"), and O.R.C. Chapter 4112 *et seq.*

4. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A) of the FMLA, the ADA, and O.R.C. Chapter 4112 *et seq.*

5. At all times relevant herein, Defendant was engaged in commerce or an industry or activity affecting commerce and employed 50 or more employees for each working day during each of 20 or more calendar workweeks at all times during Plaintiff's employment.

## JURISDICTION AND VENUE

6. This action is brought pursuant to the FMLA, ADA, and O.R.C. § 4112.

7. Jurisdiction is conferred upon this Court by 28 U.S.C § 1331, which provides for original jurisdiction of Plaintiff's claims arising under the law of the United States.

8. This Court has jurisdiction over Plaintiff's claims under the statutory law of Ohio pursuant to supplemental jurisdiction as codified at 28 U.S.C § 1367.

9. This Court has jurisdiction over Plaintiff's claim under the ADA, as Plaintiff has exhausted all administrative remedies and received a Right to Sue Letter on or about November 24, 2020.

10. Venue is proper pursuant to 28 U.S.C § 1391 because Plaintiff entered an employment relationship with Defendant in the Southern District of Ohio and performed her job duties there, and Defendant is doing and has done substantial business in the Southern District of Ohio.

## FACTUAL BACKGROUND

11. Plaintiff began her employment at Defendant in or around September 2012.

12. Plaintiff's work performance was strong, so Defendant promoted her several times.

13. Plaintiff was promoted by Defendant to the following positions: Shift Leader; Assistant Manager; Manager in Training; and, ultimately, Store Manager.

14. Plaintiff was moved to Defendant's Store No. 177 in or around October 2016.

15. Plaintiff was working approximately 45 to 50 hours per week for Defendant prior to her taking FMLA leave.

16. In or around November 2017, Plaintiff took FMLA leave after her diagnosis of sepsis, resulting in surgery and heavy antibiotics.

17. Plaintiff spent a total of 8 days in the hospital, plus an additional 13 days at home recovering.

18. Defendant removed Plaintiff as Store Manager from Store No. 177 while she was on FMLA leave.

19. Upon her return, Defendant transferred her to work as Store Manger at Store No. 024.

20. This was not a comparable position to Plaintiff's previous position, because, among other reasons: (1) the new position added almost 30 minutes to Plaintiff's daily commute, creating significant problems given that she had children to pick up from daycare at certain times; and (2) the mileage put significant wear-and-tear on her car.

21. As such, Plaintiff made several complaints to Defendant about being placed in the new position upon her return from FMLA leave.

22. When Defendant refused to place Plaintiff back in her previous position, Plaintiff contacted the Department of Labor ("DOL").

23. The DOL investigated Plaintiff's complaint and determined Defendant violated Plaintiff's rights under the FMLA.

24. Accordingly, the DOL instructed Defendant to place Plaintiff back in her Store Manager position at Store No. 177.

25. Defendant returned Plaintiff to that position on or about December 28, 2018.

26. When Plaintiff was returned to her prior position at Store No. 177, Defendant took a number of negative actions against her, including providing Plaintiff baseless write-ups and significantly reducing her store's labor hours.

27. After the DOL required Defendant to return Plaintiff to her position at Store No. 177, Defendant wrote Plaintiff up six times for baseless reasons.

28. In addition to Defendant's baseless write-ups against Plaintiff, Defendant also significantly reduced Plaintiff's labor hours at Store No. 177.

29. During the two months prior to Plaintiff's returning from FMLA leave (November and December 2018), Defendant allocated 465 labor hours to Store No. 177 during each of those months.

30. In contrast, Defendant allocated the following labor hours to Store No. 177 during the first three months following Plaintiff's return after taking FMLA leave: January – 380; February – 390; and March – 390 labor hours.

31. Plaintiff was extremely upset that Defendant allocated her so few labor hours when she returned to Defendant's Store No. 177 given the following reasons: (1) it was a drop of almost 75 labor hours compared to what was allocated the month prior; (2) Store No. 177 is a "hot food" store, requiring an additional 40 hours per week compared to non-hot stores; (3) Store No. 177 is a 24-hour store, requiring additional labor hours in order to keep it open those hours; and (4) Store No. 177 is a high-sales volume store, which is another factor requiring higher labor hours.

32. Additionally, Defendant transferred Plaintiff's long-time, well-trained Assistant Store Manager, Tanyell Lynch, to a different store shortly after Plaintiff returned to the store.

33. The loss of Ms. Lynch was significant because it left Plaintiff understaffed, particularly regarding employees with management-level training and experience.

34. Defendant's decision was very unusual as the company generally only transfers an Assistant Store Manager if Defendant can replace that person with another management-level employee.

35. Defendant's reduction in hours allocated to Store No. 177 and its decision to transfer Ms. Lynch made managing the store much more difficult for Plaintiff; having enough labor hours and trained personnel is generally necessary to perform the required tasks expected of Plaintiff.

36. For instance, Store Managers for Defendant can only devote the necessary time to work in the office to complete the store's paperwork if they have the labor hours available so other employees can fulfill the tasks in the front of the store.

37. Plaintiff had to work additional hours to make up for the shortfall in hours and to keep the store running, making her life especially difficult.

38. As exempt employees, Defendant expects Store Managers, including Plaintiff, to work additional hours to make up the shortfall in hours.

39. During the first four-and-a-half months Plaintiff worked for Defendant in 2019, Plaintiff worked an average of 61.47 hours per work to make up for the shortfall in labor hours.

40. Plaintiff's average hours worked during that time was a significant increase compared to the average hours prior to her taking FMLA leave.

41. On or about May 10, 2019, Defendant provided Plaintiff the option of: (1) taking a demotion to an Assistant Manager position; (2) continuing to work in the Store Manager position, but with the clear message that Defendant would terminate her employment if she continued to perform in the same manner; or (3) resign her employment at Defendant and potentially receive unemployment compensation benefits.

42. On or about May 15, 2019, Plaintiff needed to take medical leave due to Defendant's continued harassment and retaliation against her.

43. Plaintiff applied for a leave of absence under the FMLA due to a nervous breakdown she suffered.

5

44. Plaintiff was diagnosed with anxiety, PTSD, and depression, each of which are defined as "serious health conditions" under the FMLA.

45. Plaintiff provided Defendant the required paperwork including her medical documentation to support her requested leave of absence.

46. On or about July 11, 2019, Plaintiff provided, among other things, her medical documentation via both mail and facsimile from her medical provider to Defendant's representative, Stefanie Attinger.

47. Plaintiff followed up with the submissions by emailing Ms. Attinger to confirm receipt.

48. Plaintiff later discovered that Ms. Attinger quit her employment at Defendant in early July 2019.

49. Defendant claims it did not receive Plaintiff's paperwork to support her request for leave.

50. Despite Plaintiff submitting this information, Defendant terminated her employment on or about July 30, 2019, claiming that she failed to provide the proper paperwork.

**FIRST CAUSE OF ACTION**
**Retaliation – Violation of the Family and Medical Leave Act**

51. Plaintiff reasserts and reincorporates all allegations in the paragraphs as if fully rewritten herein.

52. At the times Plaintiff requested medical leave under the FMLA, she had worked for Defendant more than one thousand two hundred and fifty (1,250) hours in the twelve months prior to her request(s) and she had been employed in her position for more than twelve (12) months.

53. Plaintiff was an "eligible employee" as defined by 29 U.S.C. § 2611(2).

54. Defendant employed more than 50 persons within a 75-mile radius of Plaintiff's place of employment.

55. Defendant is an "employer" as defined by 29 U.S.C. § 2611(4)(A).

56. Plaintiff was incapacitated for more than three consecutive days because she could not perform her job duties due to her diagnosis of sepsis, anxiety, PTSD, and depression, each of which qualify as "serious health conditions," as defined by 29 C.F.R. § 825.113.

57. Plaintiff received treatment two or more times within the first 30 days of incapacity.

58. Plaintiff suffered an adverse employment action: (1) when Defendant significantly reduced Plaintiff's labor hours; (2) when Defendant provided Plaintiff constant write-ups; (3) when Defendant gave Plaintiff the option of demotion, resignation, or termination; and, ultimately, (4) when Defendant terminated her from her position in retaliation for requesting FMLA leave.

59. Defendant lacked good faith and/or reasonable grounds to believe that it had not violated the FMLA in its discharge of Plaintiff.

60. Defendant's violation of the FMLA entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
### Interference – Violation of the Family and Medical Leave Act

61. Plaintiff reasserts and reincorporates all allegations in the paragraphs as if fully rewritten herein.

62. Defendant knew or should have known that Plaintiff's request for time off work qualified for FMLA leave.

63. Defendant interfered with Plaintiff's FMLA rights by not affording her the job-protected leave to which she was entitled and not restoring her to same or comparable position.

64. Defendant lacked good faith and/or reasonable grounds to believe they had not violated the FMLA in its discharge of Plaintiff.

65. Defendant's violation of the FMLA entitles Plaintiff, pursuant to 29 U.S.C. § 2617(a), to monetary damages which include back pay and benefits, statutory liquidated damages, and attorneys' fees and costs of bringing this litigation, in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
### Disability Discrimination – O.R.C. § 4112, *et seq.*

66. Plaintiff reasserts and reincorporates all allegations in the paragraphs as if fully rewritten herein.

67. Plaintiff was diagnosed with anxiety, PTSD, and depression. These diagnoses substantially limit her ability to perform life activities. At all times relevant hereto, Plaintiff had a disability, a record of physical impairments, and was regarded by Defendant as having a physical impairment as defined by O.R.C. § 4112.01(A)(13).

68. As a person with a disability, Plaintiff is a member of a protected class.

69. Plaintiff was qualified for her position based on the fact that she performed her job successfully for several years.

70. Defendant's decision to terminate Plaintiff was casually connected to Plaintiff's disability because, among other reasons, Defendant terminated Plaintiff less than a week after she requested medical leave because of her disabilities and she was replaced by a non-disabled person.

71. Plaintiff will be able to establish that any allegedly legitimate reason for her termination was a pretext of discrimination.

72. Defendant acted with malice or reckless indifference to Plaintiff's rights under state and federal law.

73. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

## FOURTH CAUSE OF ACTION
### Disability Discrimination – ADA

74. Plaintiff reasserts and reincorporates all allegations in the paragraphs as if fully rewritten herein.

75. Plaintiff was diagnosed with anxiety, PTSD, and depression. These diagnoses substantially limit her ability to perform life activities. At all times relevant hereto, Plaintiff had a disability, a record of physical impairments, and was regarded by Defendant as having a physical impairment as defined by the ADA.

76. Plaintiff was qualified for her position based on the fact that she performed her job successfully for several years.

77. Defendant's decision to terminate Plaintiff was casually connected to Plaintiff's disability because, among other reasons, Defendant terminated Plaintiff less than a week after she requested medical leave because of her disabilities and because she was replaced by a non-disabled person.

78. Plaintiff will be able to establish that any allegedly legitimate reason for her termination was a pretext of discrimination.

79. Defendant acted with malice or reckless indifference to Plaintiff's rights under state and federal law.

80. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

## FIFTH CAUSE OF ACTION
### Failure to Engage in the Interactive Process/Provide a Reasonable Accommodation
### O.R.C. §4112, *et seq.*

81. All of the preceding paragraphs are realleged as if fully rewritten herein.

82. Defendant knew of Plaintiff's disabilities.

83. At the time that her employment was terminated, Plaintiff could perform the essential functions of her job with or without reasonable accommodations.

84. Defendant discriminated against Plaintiff by failing to engage with her in the "interactive process." Plaintiff made Defendant aware of her need for assistance with her job requirements due to her medical issues, but Defendant failed to engage in the interactive process in good faith with Plaintiff to determine whether a reasonable accommodation was possible.

85. Defendant discriminated against Plaintiff by failing to provide Plaintiff requested reasonable accommodations, including but not limited to, job-protected leave.

86. Plaintiff's disability, her record of having a physical impairment, and Defendant's regard for her having a physical impairment were determining factors in Defendant's decision to terminate Plaintiff's employment.

87. Defendant's conduct violated O.R.C. § 4112.02. Defendant discriminated against Plaintiff by terminating her on the basis of her disability and failing to provide the requested reasonable accommodation of job-protected medical leave.

88. Defendant acted with malice or reckless indifference to Plaintiff's rights under state and federal law.

89. As a result of Defendant's unlawful actions, Plaintiff has been damaged.

### SIXTH CAUSE OF ACTION
### Failure to Engage in the Interactive Process/Provide a Reasonable Accommodation ADA

90. All of the preceding paragraphs are realleged as if fully rewritten herein.

91. Plaintiff, in requesting a leave of absence, requested an accommodation for her disability. This accommodation was reasonable and could have been made by Defendant without undue hardship.

92. Defendant discriminated against Plaintiff by failing to engage with her in the "interactive process." Plaintiff made Defendant aware of her need for assistance with her job requirements due to her medical issues, but Defendant failed to engage in the interactive process in good faith with Plaintiff to determine whether a reasonable accommodation was possible.

93. Defendant discriminated against Plaintiff by failing to provide Plaintiff requested reasonable accommodations, including but not limited to, job-protected leave.

94. Plaintiff's disability, her record of having a physical impairment, and Defendant's regard for her having a physical impairment were determining factors in Defendant's decision to terminate Plaintiff's employment.

95. Defendant's conduct violated ADA. Defendant discriminated against Plaintiff by terminating her on the basis of her disability and failing to provide the requested reasonable accommodation of job-protected medical leave.

96. Defendant acted with malice or reckless indifference to Plaintiff's rights under state and federal law.

97. As a result of Defendant's unlawful actions, Plaintiff has been damaged.


WHEREFORE, Plaintiff demands for all Counts, monetary damages including back pay and benefits, statutory liquidated damages, expert witness fees and attorneys' fees and costs, front pay, and compensatory damages in an amount to be determined at trial, but in any event not less than $75,000.00 and any and all other relief, which this Court deems just and appropriate.

Respectfully submitted,

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)
**GIBSON LAW, LLC**
9200 Montgomery Road, Suite 11A
Cincinnati, OH 45242
brad@gibsonemploymentlaw.com
[T]: 513.834.8254
[F]: 513.834.8253

*Attorney for Plaintiff*

## JURY DEMAND

Plaintiff hereby requests a jury of at least eight (8) persons.

/s/ Bradley L. Gibson
Bradley L. Gibson (0085196)